Good morning, Your Honor. Good morning. Name's Isaac Morton. I represent, my name is Brian Norwood. I represent Mr. Connors. I'm going to reserve about two minutes of my time. If you would like to keep your eye on the clock, we'll try to help him. Thank you. Now, as usual, the Council on Instruction has pleaded a number of due process issues that I and also Mr. Jentz have been transferring to our briefing. What I'd like to focus on in my argument is an issue that is particular to Mr. Connors.   last year, the case here in the Riley case last year, the case here in the Riley case that was presented here, Mr. Connors' offense happened before the Casulans' decision. Just like Riley, Mr. Connors lacked clear notice of Casulans' expansion of versus breaker, while establishing due process principles as far as using his trial. For Riley, it was true that not only the offense, but also the trial and the data finality were all before Casualie. Because all of the potential benchmarks were before Casulie, Riley didn't have any occasion to consider which benchmark would control a case like Connors' where the offense happened before him, but the trial and finality were afterwards. But there is a 50-year-old Supreme Court case that answers that question. And it's Bowie v. City of Columbia. Bowie establishes that the benchmark is the law at the time of the offense. It's a notice issue. And in denying Mr. Connors' claim on his merits, the Nevada Supreme Court used the wrong benchmark. Its ruling was that Casulie was correct at the time of his trial. That decision was contrary to the new established federal law, because they should have been looking to what the law was at the time of his offense. What Bowie prohibits is an unforeseeable judicial expansion of the arrow on precise statutory language. And that describes Casulie to a T, as this Court described it just last year in Riley. It had a statute here that was passed by the Territorial Legislature that stipulated that language would remain the same up to the present day. And it spells out these three mens rea elements, including, most critically, the element of premeditation. And there is a consistent interpretive case law in the Nevada Supreme Court. Again, from 1864 up until Casulie in 1992, that recognized there needed to be a separate element of deliberateness. And Casulie was of middle-range. It completed the three elements of premeditation. And it completed premeditation with a very strong premeditation. And it did not apply to offenses that Casulie intended to kill, as the Court itself recognized in Byford. Whatever the merits of the play, the Casulie decision to offenses that took place after Casulie, in cases like Pence, for example, it could not be constitutionally applied to offenses that took place before Casulie was decided. And again, all I'm saying here is what this Court has consistently said in Riley and going back to Polk, what the Nevada Supreme Court itself said in Byford. And I believe Judge Erickson brought up the issue of harmless error, which I'd like to address here. The first thing I say about harmless error in Mr. Conner's case is that in this case, I've been looking at this case in federal court now for over eight years. And the very first time that the State raised any contention that the error in this case was harmless was in the answering brief in the filing of this appeal. That argument was all of about two paragraphs. And it's not a swath. So I think there's a real issue here of whether the State should be heard to raise harmless error at this point. But... So to make sure I understand correctly, you're saying the first time the State raised harmless error was in its reply brief in this case? Its answering brief. The answering brief, okay. This is the second time we've been out here. I've been making this harmless error argument. It sticks to the same form. Back in 2010, we briefed it. It was the first time around before it was sent back. Do you have anything to explain? I do. But if the court reaches the issue in confinement, this is harmful error. It's true that there was a felony murder theory involved in this case as well. And we knew that. We saw that we preceded under what's called this open murder instruction, which allows the jury to find any type of first-degree murder. But that's true of other cases, including Riley, where this court has found harmful error. The fact is that there wasn't any clear theory presented in this case as to the culpability of Chris. And Brother Tim was actually the shooter in the case. There was some claim that there was a robbery planned, that they were planning to steal his pee. Although no evidence that this was going to involve killing him. But there are other theories mixed up as well. In the special verdict form, did the jury find that there was, when blaming is true, a potential source of felony murder? With respect to Tim, but not with respect to Chris. Was Chris involved in the special verdict? No. No. The sole aggravating circumstance, and this was a death penalty case, the sole aggravating circumstance that was presented to the jury was participation in a robbery. The jury returned the verdict form with that aggravating circumstance, with respect to Tim but not with Chris. With Chris, they returned a form claiming a number of intimidating circumstances that stressed his lesser role in the case. Including some intimidating circumstance that he was acting under the domination of another person. And there were remarks, which I think Judge Erickson might have been referring to, they specifically said they had doubts about Chris's involvement. So this is clearly a case where the jury saw a difference between Tim's culpability and Chris's culpability. In this case, in order for the felony murder concept to be harmless error under break, wouldn't the inquiry be whether it was reasonably certain that the jury did convict you based on the felony murder theory? I think so. I mean, the ultimate inquiry is whether the court has weighed down to the maximum potential harmfulness of the error. But, you know, this court has ruled, you know, really in Nika, I'm sorry, not Nika, in Babb and then, more recently, in Riley, that the fact that there is a felony murder theory floating around doesn't dispute this inquiry. In fact, in this case, what we have that wasn't present in Riley is there are very good reasons to believe the jury rejected that felony murder theory and that they convicted Chris only because of this casically absurdity to which the prosecutor went to great lengths to emphasize in the closing argument. And the basic problem with casically is that, you know, any murder becomes first degree murder. And all it requires is intent. The way the prosecutor described it to the jury is, you know, following the language of instruction, you just need to instantly premeditate this at any point. The example she gave, though, was I could walk up to you and not instantly decide to shoot you and pull the trigger. That's first degree murder. It completely takes away this requirement of deliberation. So it's quite easy to convict a first degree murder. And that's why prosecutors, especially the prosecutor in this case, stressed it so much. Do you feel that the Riley decision, viewed as a strictly constitutional matter, found that the Catholic instruction itself was defective constitutionally because of the conflation of these essential elements in a murder conviction? I think it could be read that way. I mean, I think this Court's decision is always the Court's decision. Before Riley, it recognized that this Catholic instruction presents a constitutional issue. And the issue that's sort of been reserved of these individual cases I've been talking about is sort of when we look at the law for these petitioners who are in different situations. So the reason that Plotter's case is different than most of the cases that came before, including Gensys, but like the reason the issue is even more fundamental here is that Catholic didn't exist at the time that the case existed. You want to save the balance of your time? I would. Thank you. Thank you. I will move to your next trial, Ms. Stern, I believe. Good morning. Good morning, Your Honors. I'm Heidi Stern on behalf of the respondents of Helmese in this matter. The question before this Court, from our perspective, is one of whether or not the jury should give effect to the Nevada Supreme Court's statement of Nevada law. The Nevada Supreme Court has determined that prior to its 2000 decision in Byford, Nevada law did not require an independent definition of deliberateness to be given in a jury instruction for first-degree murder. The Nevada Supreme Court approved the so-called Kaslan instruction, given in this case as the correct statement of Nevada law, and as a result, Connors petition must be denied. In addition, as this Court has noted, the error in this case was harmless under any circumstances. What is your best argument that this was harmless error? My best argument is felony murder. I'm not sure if I misunderstood counsel, but Chris Connors was found guilty of robbery, and I just wanted to make sure that was clear. So if one were to look at the jury instructions given in this case, you can see that the jury was instructed that it could find first-degree murder on either ground, felony murder or willful deliberate and premeditated. And as a result, they gave a general verdict, and it certainly could have been felony murder. But what is your view about what argument was made concerning felony murder? Did the prosecutors say anything about felony murder in the closing argument or during the trial about felony murder? I believe so, yes. Do you have a citation in the record? I don't have a citation in the record. I can't do it. I'm sorry. And what? It was certainly discussed extensively in the jury instructions as well. Okay. So the jury instructions. And which jury instructions do you refer to in particular? Yes. So the jury instruction I am referring to is the one I've written down, of course, and I haven't. Oh, it's jury instruction 12. I think maybe that's the best one to refer to. The first-degree murder can be a mixed verdict. So any of the jurors, some jurors can find felony murder, some jurors can find premeditated, lawful, and deliberate. And does it say that? It does. Yes, jury instruction 12 says that, yes. And then also, jury instruction 8, I would point the court to, which is the definition of first-degree murder, which includes either felony murder or premeditated, lawful, and deliberate. So that was clearly presented to the jury. So from your perspective, there's not only not a waiver here, but it's an essential part of the case? I think that it's just unquestioned that this was one of the most marvelous categories pulled out. I can't answer the court's question as to why the prior counsel did not raise this. It's true that we did raise it in our answer brief. We can only assume that they were focused more on who has the issue. Is the argument that the stakes were waived? Does your argument evaluate? No. We clearly addressed it in our answer brief. It's a long way down the road. As he points out, this is a lengthy case. This is a lengthy case. You just have a preference to this in the most recent response you briefed. That's true, but regardless, it's a waiver. It was argued. In the argument at what point? In the answer brief. That is true. That is correct. It wasn't argued in the district court. I don't believe so. And the district court did not address it either in its order. I'd like to go ahead and move on to something that this court had asked in questions regarding Riley. And I think that the reason we state that Nevada law really is determinative here is because even Riley relied on an understanding of Nevada law. In Riley, this court said, because Nevada law treated deliberation as a distinct element of first degree murder, at the time Riley was convicted, this is pre-1992, pre-Powell, and at the time his conviction became final, the use of the catastrophic instruction constituted a due process violation. So certainly this court has the authority to determine federal law, but if it's premised on a misunderstanding of state law that the Nevada Supreme Court now says it disagrees with, then this court needs to adopt Nevada state law. That's a very interesting issue. So your position is that because the Nevada Supreme Court is, of course, the ultimate arbiter of what Nevada law is, if there is a federal court that determines that a particular instruction violates a federal constitution, you're saying that our court is required to conform to Nevada's understanding of what federal law is? No, not at all, Your Honor. This court needs to premise its federal due process decision on a correct understanding of Nevada law. So Riley relied on an understanding. But to say that the Nevada Supreme Court said that it was okay to cut off somebody's arm because they were a robber, and that that was really a good thing to do because then you'd really know who the robbers were. And we decided that even though that was a candid event a lot under the Eighth Amendment of the federal constitution, that's not okay. Who wins? Well, in that case, you're questioning whether it's okay. In this case, it's not a question of whether. I guess you can say that. Let me speak out loud for a minute to try and respond to your question. Okay. What happened in this case is Nevada has said, our law before my third rule did not require a separate definition of deliberateness. And as this court knows, that's how the federal jury instructions work. Many other states have that same rule with regard to first degree murder instruction. So, that is an okay way, that's I guess the distinction between the hypothetical. It's been accepted, it's okay to not define every single, all of those three words. You can define deliberate as part of premeditation. You know, that's true. But in other states, you need to define deliberation. They say that deliberation was in fact subsumed into premeditation. And doesn't that conflate the different elements? If you conflate the elements, doesn't that raise a federal constitution question that needs to be addressed? It would if that were the case. But the Nevada Supreme Court has actually been very careful to make sure that there remains a distinction between first and second degree murder. If you look at the Hearn case, and you look at the Byford concurrence in particular, it says that very clearly, you can see that the Nevada Supreme Court considered that. And I'll just turn to Byford, I mean, sorry, Hearn, where the Nevada Supreme Court was tasked with the question of distinguishing between malice of forethought and premeditated homicide. And as this Court knows under Hearn, it accepted that there did not need to be these three different definitions. It says that all three elements have to be proved. But right above that, it must be read in context that malice, that intentional homicide without premeditation, is murder in the second degree. But what I struggle with your counsel is the point that you're pointing, I mean, that you can have someone that, at the very instant of striking someone, just at the last second, that fury strikes them down. Under the Kaslan instruction, arguably, that could be first degree murder because it could be so easily inflated with premeditation. How long do you have to premeditate? One second? Half a second? Yes, that's the confusing point. And I think is the problem that at least Riley struggled with is how do you separate these, what normally are different crimes, based on a different mens rea requirement? And it seems like the Kaslan instruction permits, indeed almost, minds the jurists, going to conflate these to some degree, depending on how they feel about the defendant and the crime. Isn't that a problem constitutionally? They don't take it as a due process violation because there is still the distinction of choice. Now, as a forethought, does not require a considered choice to kill. No matter how long you're given to make that choice, that is the distinction between first and third degree murder. But if you're a juror and you have someone who is going along with a friend and suddenly just remembers something that the friend did, turns around, stabs the person, you know, in an instant, doesn't the jury have the right, under the Kaslan instruction, to determine whether it's first degree murder or second degree murder or perhaps something less? Yes, it does, yes. That troubles me. And I would ask this court, I understand your concern, I would just ask this court to turn to the actual jury instructions in this case in considering that concern because I think that if the court were to look at these jury instructions, and this is starting with jury instruction six, eight, and nine are probably the most pertinent, read as a whole, as this court must not read jury instructions in isolation, read as a whole, the distinction between first and second degree murder, I believe, comes through loud and clear. And if the court has no further questions. Thank you very much for your presentation. Mr. Darwin, I think you have some time reserved. Speaking today has probably said more about Farmer's Error than they have in the entire history of these proceedings. I'm glad we've cited the case law that shows that Farmer's Error is a livable issue if it's not raised in district court. But just to address what they're saying. And I gather you reaffirm that until the response you brief in this particular appeal, the state has never raised the issue of the Farmer's Error in the district? They mentioned that Mr. Connors was convicted of a robbery. That was also true of Mr. Riley. That's not dispositive of the issue. He could be convicted of a robbery, but not be convicted as part of the felony murder theory. Evidence in this case was that Mr. Connors might have taken the gun after Mr. Bailey. I mean, he was killed. It could be a robbery, but not a felony murder. There was also the issue raised of a mixed verdict. That's all the more reason why the courts find this to be harmful. I mean, if 11 jurors found a felony murder theory, and one juror found premeditation with a casualty verdict, it's still harmful error if that one juror relied on the casualty description. The jury didn't have to simply do a preemptive theory. As far as the State's merits argument goes, what I offer is that there's nothing new being submitted here. The State is making the same argument based on the Deacon case that it's made in Riley and it's made in other cases. This issue of separate definitions is a strong here. What the State can't deny, what the Nevada State Court can't deny is that deliberation was consistently recognized as something that you needed to prove prior to Castleman, and Castleman took that away. And that's where the issue comes from. Okay. Thank you, both counsels, for your very helpful arguments. Interesting and challenging cases. The case just argued is submitted.
judges: Wallace, M. Smith, Erickson